ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2-14-2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------X

TIVO, INC.,

Petitioner,

- against -

DOROTHY GOLDWASSER, ROMI JONES NÉE GOLDWASSER, and GOOD INVENTIONS, LLC,

Respondents.

---------------------------------------X

12 Civ. 7142 (LLS)

MEMORANDUM AND ORDER

Petitioner TiVo Inc. ("TiVo") moves to vacate an arbitration award in favor of respondents Dorothy Goldwasser, Romi Jones née Goldwasser, and Good Inventions, LLC (collectively "the Goldwassers"), who cross-move to confirm the award and enter judgment for them.

Background

The Goldwassers owned the patent to the first iteration of digital video recorder ("DVR") technology (the "Goldwasser patent"). Under a licensing agreement (the "PLA"), the Goldwassers granted to TiVo "the sole and exclusive (even as to the Goldwassers), worldwide, perpetual, irrevocable, transferable, right and license (including the right to sublicense through multiple tiers) in and to all rights and interests in the [Goldwasser patent]" until its expiration on March 12, 2011. Snader Decl. Ex. A ¶ 2.

In exchange, the Goldwassers received: TiVo stock, "royalties on behalf of TiVo and its licensees and sublicensees for . . . TV DVRs manufactured . . ." during the term of the PLA, whether under the Goldwasser patent or not, see id. Attachment One ¶ 1, and forty percent of any "Net Litigation Recovery," defined as "any case payment or other judgment, award or settlement, including non-cash compensation, tangible benefits and intangible benefits actually received by TiVo and directly attributable to the enforcement of the [Goldwasser patent] against third parties in pending or threatened litigation, arbitration or any other dispute resolution process . . . ," see id. ¶ 3.

After TiVo's attempts to license DVR technology to EchoStar Communications, Inc. ("EchoStar") failed, TiVo sued EchoStar for patent infringement. TiVo did not assert the Goldwasser patent in that litigation. A jury awarded TiVo damages of $74 million for EchoStar's infringement, but the dispute between TiVo and EchoStar continued for another five years, ultimately resulting in a judicial finding of continued infringement. In April 2011, after the PLA had expired, EchoStar paid TiVo $500 million in settlement of that litigation.

The Goldwassers contend that TiVo breached the PLA by refusing to pay them royalties arising from the EchoStar

settlement. In pursuit of those royalties, the Goldwassers initiated an arbitration under the arbitration clause in the PLA, see id. Ex. A ¶ 17.

A three-member arbitration panel was appointed and a two-day hearing before the panel was held. An award in favor of the Goldwassers was rendered on August 23, 2012. One member of the panel dissented.

The panel majority addressed the question whether the PLA requires TiVo "to pay royalties under the circumstances where an infringer is ultimately compelled by litigation to pay revenue that [TiVo] attempted to obtain through a license," id. Ex. Q, at 3. That issue was presented to the panel when the Goldwassers argued that EchoStar's use of TiVo's DVR technology (a "DVR functionality" under the PLA) during the term of the PLA was effectively an implied license, see id. Ex. G, at 11-13.

The majority opined that, without an obligation to pay royalties under such circumstances, the Goldwassers' "entitlement to royalties would be subject to forces completely beyond their control, as there were no minimum royalty guarantees in the PLA," id. Ex. Q, at 4, a result that would contravene "the parties' expressed intentions, i.e. to forge a 'win-win' partnership in which [the Goldwassers] would share in TiVo's growth whether by licensing or litigation, as testified

3

by [TiVo's representative]," id. Accordingly, the panel majority concluded that TiVo is obligated to pay the Goldwassers royalties arising from the EchoStar settlement, grounded in TiVo's implied obligation to exercise good faith and deal fairly with the Goldwassers.

TiVo moves for vacation of the award on various grounds, and the Goldwassers cross-move for its confirmation.

## Discussion

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993). The party seeking to vacate the award bears the burden of proof. Id. If "a barely colorable justification" for the arbitration award exists, the award should be confirmed. Landy Michaels Realty Corp. v. Local 32B-32J, Service Employees Int'l Union, AFI-CIO, 954 F.2d 794, 797 (2d Cir. 1992).

Under Section 10 of the Federal Arbitration Act (the "FAA"),[1] a court may vacate an arbitration award:

---

[1] The parties dispute the applicability of the FAA. The Goldwassers argue that the PLA requires review under the New York standard, under which a court considers "whether the arbitration award 'violates a strong public policy, is irrational or clearly exceeds a specifically enumerated limitation on the arbitrator's power.'" County of Nassau v. Chase, 402 F.App'x 540, 542 (2d Cir. 2010) (quoting N.Y.C. Transit Auth. v. Transp. Worker's Union of Am.,

4

> (1) Where the award was procured by corruption, fraud, or undue means.
>
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
>
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.
>
> (4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> 9. U.S.C. § 10(a)(1)-(4).

An arbitration award may also be vacated for its manifest disregard of the law, see Goldman v. Architectural Iron Co., 306 F.3d 1214, 1216 (2d Cir. 2002) (quotations and citations omitted):

> Given the deference afforded arbitration decisions, this standard requires more than a mistake of law or a clear error in fact finding. Manifest disregard can be established only where a governing principle is well defined, explicit, and clearly applicable to the case, and where the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature.

---

Local 100, AFL-CIO, 6 N.Y.3d 332, 336 (2005)). TiVo argues that the arbitration award must be reviewed under the FAA, or, alternatively, that the award should be vacated under the New York standard because it is irrational. As discussed below, the arbitrators were not guilty of misconduct and did not exceed their power, nor was the award irrational or in manifest disregard of the law. Thus, the award must be confirmed whether reviewed under New York state law, or the standard required by the FAA.

TiVo argues that the arbitrators were guilty of misconduct in refusing to hear material evidence, and exceeded their powers in their interpretation of the PLA, an interpretation which embodied a manifest disregard of the law.

1.

TiVo argues that the arbitration panel "refuse[d] to hear evidence pertinent and material to the controversy," 9 U.S.C. § 10(a)(3), "by manufacturing a basis for recovery - the implied covenant of good faith and fair dealing - that was not advanced, or even mentioned, by any party," Pet'r's Br. 12, and that the panel exceeded their powers by "basing the Award on a theory not advanced by any party," id. at 13.

The implied covenant of good faith and fair dealing inheres in all New York contracts, and is not a separate ground for recovery. District Lodge 26, Intern. Ass'n of Machinists & Aerospace Workers, AFL-CIO v. United Echnologies Corp., 610 F.3d 44, 54-55 (2d Cir. 2010). Thus, the application of the implied covenant of good faith and fair dealing has a recognized and legitimate function in any contract litigation. It is a concept which did not require independent evidence during the arbitration hearing to establish TiVo's implied obligation to deal fairly with the Goldwassers, and no such evidence was

offered or refused; the topic was briefed by the parties at the arbitrators' request.

2.

TiVo also contends that the panel exceeded its authority by adopting an interpretation of the PLA that is contrary to law, in manifest disregard of the law, and irrational.

First, TiVo argues that, because the payment from EchoStar occurred after the expiration of the PLA, the panel majority's decision is contrary to law because it conflicts with the PLA's provision that only payment obligations that "arise prior to termination" survive expiration, see Snader Decl. Ex. A ¶ 9.3.

The majority concluded that, "The payment obligation at issue here 'arose' not when Dish/EchoStar agreed to write the settlement check, but when it manufactured TV DVRs using DVR Functionality during the term of the PLA." Id. Ex. Q, at 4. That conclusion is consistent with finding that EchoStar was compelled to pay for the equivalent of a license of DVR technology for DVRs EchoStar had already manufactured, and is not irrational.

Second, TiVo argues that payment of damages for patent infringement is so fundamentally different from a patent license, that the majority's conclusion that the EchoStar settlement was the functional equivalent of a license is

7

contrary to law. However, TiVo gives no authority demonstrating that the reciprocal relationship between an imposed hypothetical patent license and the patent infringement it remedies is so bizarre that the arbitrators manifestly disregarded the law, or were irrational, in concluding that the concept was available under the PLA. To the contrary, it is commonly employed. See, e.g., Juicy Couture ,Inc. v. L'Oreal USA, Inc., No. 04-cv-7203, 2006 WL 1359955, at *4 (S.D.N.Y. May 18, 2006) ("A royalty is a measure of compensation for past infringement based on the reasonable value of a license to use the trademark that the infringing defendant should have paid.").

## Conclusion

For the reasons set forth above, TiVo's motion to vacate the arbitration award is denied.

The Goldwassers' motion to confirm the award and enter judgment in their favor is granted, and the Clerk shall enter judgment accordingly, with interest from the date of the arbitrators' award at New York State's statutory rate of nine percent per annum, as routinely granted by judges in this district, see, e.g., Service Employees Intern. Union v. Stone Park, 326 F.Supp.2d 550, 555-56 (S.D.N.Y. 2004).

Within 10 days of the date of this order, the parties shall advise the Court which portions of their briefs and evidentiary

8

materials in support of their motions they wish to be redacted before all those materials are placed in the public record by unsealing them, showing good cause for each such redaction. Objections to the unsealing of portions not thus identified are waived.

So ordered.

Dated: New York, NY
       February 13, 2013

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.