CONFIDENTIAL – ███████████

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

In the Matter of Arbitration between TiVo Inc., a Delaware Corporation,

                Petitioner,

v.

Dorothy Goldwasser, Romi Jones née Goldwasser, and Good Inventions, LLC, a New York Corporation,

                Respondents.

Civil Action No. 12-cv-7142(LLS)

**PETITION TO VACATE ARBITRATION AWARD**

---

Petitioner TiVo Inc. ("TiVo") petitions this Court to vacate the Final Award of Arbitrators issued on August 22, 2012, ("Award") by two of the three member panel ("Majority"). Vacatur is required for three reasons. The Majority (1) refused to give TiVo a fair opportunity to be heard in basing the Award on a theory not raised by any party; (2) exceeded their authority in several respects, including relying on a theory specifically disclaimed by Respondents Dorothy Goldwasser, Romi Jones née Goldwasser, and Good Inventions, LLC (collectively "the Goldwassers") and disregarding New York principles of contract interpretation; and (c) manifestly disregard the law, including by equating a finding of patent infringement with the grant of a patent license. The Chair of the arbitral tribunal identifies these and other errors in his Dissent from the Final Award ("Dissent"). Quite simply, the Majority strayed from their charge of interpreting the agreement at issue according to New York law and injected their own misplaced notions of fairness. Thus, the Award should be vacated.

*CONFIDENTIAL –* ▋

Contemporaneously with the filing of this Petition, TiVo has filed a Memorandum in Support of its Request to Vacate the Arbitration Award and the supporting Declaration of Shaun Snader in Support of TiVo Inc.'s Petition to Vacate the Arbitration Award ("Snader Decl.").[1] These documents provide a detailed explanation as to why the Award should be vacated.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. On information and belief, Respondents Dorothy Goldwasser and Good Inventions, LLC are citizens of New York. On information and belief, Respondent Romi Jones née Goldwasser is a resident of Washington. TiVo is a citizen of California, its principal place of business, and Delaware, its state of incorporation.

2. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Resolution of one of TiVo's claims – that the Majority expressed a manifest disregard of the law in equating a judicial finding of patent infringement under 35 U.S.C. § 271 with a license to the patent at issue – requires addressing a substantial and settled question of federal law. The Court has supplemental jurisdiction over any claims over which federal question jurisdiction is absent.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2). In addition, the New York, New York is designated in the parties' agreement for the place of arbitration and any actions related to the arbitration.

## THE PARTIES

4. TiVo is a corporation organized under the laws of Delaware with its principal place of business in Alviso, California.

---

[1] The supporting memorandum of law and this petition both cite to the accompanying Declaration of Shaun Snader in Support of TiVo Inc.'s Petition to Vacate the Arbitration Award.

5.     On information and belief, Respondent Dorothy Goldwasser is a resident of New York.

6.     On information and belief, Respondent Romi Jones née Goldwasser is a resident of Washington.

7.     On information and belief, Good Inventions, LLC is owned by the Goldwasser family and organized under the laws of New York.

## FACTS

### A. The PLA

8.     On March 12, 1991, the U.S. Patent and Trademark Office issued U.S. Patent No. 5,241,428, which names Eric Goldwasser, now deceased, and his daughter, Romi Goldwasser, as inventors ("the Goldwasser Patent"). The Goldwassers approached TiVo no later than March 9, 2001, and offered TiVo a license to the Goldwasser Patent, noting that the Goldwassers "have already been approached by other parties for a license." TiVo was not interested in the Goldwasser Patent at that time, but the Goldwassers persisted in offering to license the Goldwasser Patent to TiVo. In the second half of 2003, TiVo first expressed an interest in negotiating an agreement regarding the Goldwasser Patent. On December 22, 2003, TiVo and the Goldwassers signed a letter of intent to exclusively license the Goldwasser Patent to TiVo in exchange for TiVo paying the Goldwassers a royalty on TiVo digital video recorders manufactured and sold during the term of the agreement.

9.     Over the next several months, TiVo and the Goldwassers negotiated the details of the licensing arrangement. Ultimately, TiVo and the Goldwassers executed an agreement on March 12, 2004 ("PLA"). The PLA granted TiVo an exclusive license to the Goldwasser Patent

during its term in exchange for certain consideration. Declaration of Shaun Snader filed with this Petition ("Snader Decl.") Ex. A.

10. Specifically, the Goldwasser PLA granted TiVo "the sole and exclusive (even as to the Goldwassers), worldwide, perpetual, irrevocable, transferable, right and license (including the right to sublicense through multiple tiers) in and to all rights and interests in the [Goldwasser] Patent." *Id.* § 2. The Goldwassers, in turn, received three forms of compensation, including an upfront payment and a per product royalty. *Id.* § 4, Attachment One. The compensation details are set forth in "Attachment One: Payment Terms" to the Goldwasser PLA.

11. The first form of compensation was an upfront payment in the form of ▌ in TiVo stock. *Id.*, Attachment One § 2.

12. The second form of compensation was entitlement to a portion of any recovery from litigation asserting the Goldwasser Patent. Specifically, the Goldwassers would receive "an amount equal to forty percent (40%) of any Net Litigation Recovery (defined below) actually received by TiVo and ***directly attributable to enforcement of the [Goldwasser] Patent*** against third parties ('Litigation Recovery Payment')." (Agreement, Attachment One § 3 (emphasis added).) Thus, the Goldwasser PLA made clear that payment was only due based on "enforcement of the [Goldwasser] Patent" — as opposed to any other patent — against third parties. Net Litigation Recovery was defined to include any "award or settlement." *Id.*, Attachment One § 3(d). This Litigation Recovery Payment was thus the appropriate compensation for either an award made by a court or a settlement of litigation.

13. Finally, the third form of payment was royalty payments "on behalf of TiVo and its licensees and sublicensees." *Id.*, Attachment One § 1. The royalty was paid for "TiVo DVRs" sold and "OEM DVRs" and "TV DVRs" manufactured, as those terms are defined in the

*CONFIDENTIAL –* ▮

Goldwasser PLA. ▮

▮

▮ *Id.*, Attachment One § 1. The details regarding this royalty are set forth in Section 1 of Attachment One. TiVo paid the Goldwassers nearly ▮ in royalties over the course of the Goldwasser PLA. The Goldwassers obtained this recovery without having to face any of the risks, challenges, or costs involved in pursuing alleged infringers or obtaining licenses.

14. The PLA states that it *"shall be interpreted, governed by and enforced in accordance with and consistent with the laws of the State of New York*, which shall apply in all respect, including statutes of limitation, to all disputes or controversy arising out of or pertaining to this Agreement." *Id.* § 16 (emphasis added).

15. The PLA expired on March 12, 2011, at the same time that the Goldwasser Patent expired, and all rights in the Goldwasser Patent reverted to the Goldwassers. Only a limited number of provisions survived expiration. *See id.* § 9.

**B. The EchoStar Litigation**

16. In January of 2004, even prior to the execution of the Goldwasser PLA, TiVo sued EchoStar in the Eastern District of Texas for infringement of U.S. Patent No. 6,233,389 ("the TiVo Patent"). *TiVo, Inc. v. EchoStar Commc'ns Corp.*, Civ. Action No. 2:04-CV-01 (E.D. Tex. Jan. 2004). Specifically, TiVo contended that EchoStar, which marketed the DISH-branded satellite TV service to consumers, infringed the TiVo Patent. The Goldwasser Patent was never asserted in that litigation. *Id.* A jury agreed with TiVo in April 2006 and awarded TiVo $74 million in damages. The court subsequently entered a final judgment and permanent injunction.

*CONFIDENTIAL* – ▮▮▮▮▮▮▮▮

The U.S. Court of Appeals for the Federal Circuit affirmed. *TiVo, Inc. v. EchoStar Commc'ns Corp.*, 516 F.3d 1290 (Fed. Cir. 2008).

17. EchoStar attempted to circumvent the injunction by modifying the software in its products in a way alleged by EchoStar to be non-infringing. TiVo responded by filing a motion for contempt against EchoStar. The district court agreed with TiVo, finding that EchoStar's products continued to infringe the TiVo Patent. EchoStar once again appealed. A Federal Circuit panel affirmed the district court, but the court sitting en banc affirmed in part and vacated in part the district court's decision. Critically, the en banc decision vacated the district court's finding that EchoStar's purported design around infringed, although the contempt finding was affirmed.

18. On April 29, 2011, after expiration of the Goldwasser PLA (including expiration of TiVo's rights to grant any license or release under the Goldwasser Patent), TiVo entered into an agreement with EchoStar ("EchoStar Settlement"). The EchoStar Settlement released EchoStar from past infringement of the TiVo Patent and granted EchoStar rights to the TiVo Patent going forward, in exchange for compensation from EchoStar. Notably, the EchoStar Settlement granted no license, release, covenant not to sue, or any other rights, with respect to any patents other than the TiVo Patent family. TiVo's dispute with EchoStar — which began before the Goldwasser PLA was signed and ended seven years later, after the Goldwasser PLA was terminated — never involved the Goldwasser Patent.

### C. The Dispute and Arbitration

19. Shortly after the EchoStar Settlement, the Goldwassers contacted TiVo and for the first time took the position that "TiVo owes the Goldwassers royalties under [certain provisions of the Goldwasser PLA] *as a result of entering into the DISH/EchoStar [Settlement]*

6

*Agreement.*" Snader Decl. Ex. B at 1 (emphasis added). TiVo responded by explaining why no royalties were due, including by noting that the Goldwasser PLA had expired before the EchoStar Settlement was executed.

20.     The Goldwassers never responded to TiVo's explanation of why the EchoStar Settlement did not create a payment obligation under the PLA. Instead, the Goldwassers filed their Demand for Arbitration on August 19, 2011, alleging that events that had occurred in the EchoStar litigation prior to the expiration of the PLA purportedly were the equivalent of a "license," and allegedly gave rise to a payment obligation. Snader Decl. Ex. C.

21.     TiVo timely filed its Answering Statement, explaining why the Goldwassers were not entitled to royalties. Snader Decl. Ex. D. First, the PLA expired 48 days before the EchoStar Settlement was executed, thereby precluding recovery based on the EchoStar Settlement — even if such recovery would otherwise be due. Second, the portion of the PLA that addresses litigation recoveries like the EchoStar Settlement — Section 3 of Attachment One — does not provide for payment to the Goldwassers in these circumstances because the Goldwasser Patent was not asserted against EchoStar. The parties agree that Section 3 of Attachment One does not provide a basis for payment to the Goldwassers. Third, a royalty is not due to the Goldwassers under Section 1 of Attachment One because EchoStar is not a "licensee" or "sublicensee" of the Goldwasser Patent. In fact, the EchoStar Settlement grants EchoStar no license, release, or any other rights in the Goldwasser Patent. Fourth, the relevant EchoStar DVRs were not "licensed from TiVo" while TiVo had rights to grant sublicenses to the Goldwasser Patent. An arbitration was instituted under the American Arbitration Association ("AAA") rules on August 19, 2011. Three arbitrators were appointed on November 18, 2011 — Chairman Philip D. O'Neill, Jr. and co-arbitrators Elizabeth Gilbert and Abigail Pessen ("the Panel").

22.     Based on the procedural order entered by the Panel, if a party wished to be heard regarding a dispositive motion, the party had to first move for leave to file the dispositive motion. On March 19, 2012, TiVo timely sought leave to file a motion for summary judgment. Snader Decl. Ex. E. TiVo explained to the Panel, *inter alia*, that the EchoStar Settlement came too late to create a payment obligation based on section 9 of the Goldwasser PLA, as discussed above. *Id.* Thus, the EchoStar Settlement could not create a payment obligation under the PLA. *Id.*

23.     Faced with this argument, the Goldwassers responded by making crystal clear that they were not relying on the EchoStar Settlement as a basis for recovery in the arbitration: "The Goldwassers, however, do not seek recovery based on the EchoStar Settlement. The Goldwassers seek recovery based solely on events that occurred prior to March 12, 2011, the expiration date of the Goldwasser Agreement." Snader Decl. Ex. F at 1 (emphasis original). Those "events" are "the District Court's Final Judgment on August 17, 2006, in favor of TiVo and against DISH/EchoStar" and "the District Court's finding, on June 6, 2009[2], that the modified DISH/EchoStar products continued to infringe TiVo's patent." *Id.* at 1-2. The Goldwassers argued that these judicial findings of infringement were tantamount to a license to the TiVo Patent, which allegedly creates a royalty obligation under the PLA. In fact, the Goldwassers claimed that it was an "egregious misstatement" to claim that the EchoStar Settlement was the basis for their claim:

> TiVo's argument rests on *one egregious misstatement* about the Goldwassers' claim: that the "primary event that the Goldwassers claim gave rise to royalty obligations" is the April 29, 2011 settlement between TiVo and DISH/EchoStar. This is not correct. The events that give rise to the royalty claim are the August 17, 2006 and the June 6, 2009 orders by the District Court in TiVo's litigation against DISH/EchoStar.

---

[2] The reference to "June 6, 2009" is a typographical error and should be June 2, 2009. The District Court's second finding of infringement occurred on June 2, 2009.

*Id.* at 2 (emphasis added). Relying on the Goldwassers' unequivocal disclaimer of a theory based on the EchoStar Settlement, the panel denied TiVo the opportunity to be heard on why the EchoStar settlement cannot form the basis for recovery, and TiVo was not permitted to file its motion for summary judgment.

24. The arbitration proceeded and an evidentiary hearing was held on May 31 and June 1, 2012. TiVo presented testimony from the TiVo executive responsible for negotiating the PLA, General Counsel Mathew Zinn, and the Goldwassers likewise called Mr. Zinn as an adverse witnesss, along with respondents Romi Jones, and Todd Goldwasser. Neither Romi Jones nor Todd Goldwasser was directly involved in negotiating the PLA. Instead, the Goldwassers were represented by counsel. Inexplicably, the Goldwassers did not call their attorney, Melvin Garner, as a witness. Thus, Mr. Zinn was the only witness who had direct involvement in negotiations; Romi Jones and Todd Goldwasser testified to only their own subjective expectations and hearsay regarding negotiation of the PLA. The parties also called their respective damages experts as witnesses.[3]

25. In their opening post-hearing brief, the Goldwassers argued that EchoStar's infringement of the TiVo Patent somehow constitutes "an implied license in the nature of a compulsory license." Snader Decl. Ex. G at 11. TiVo responded by explaining that neither actual infringement nor a judicial finding of infringement can constitute a license. Indeed, infringement and license are mutually exclusive concepts, and TiVo cited legion authority for this principle.

26. On July 12, 2012, following the agreed upon post-hearing briefing, the panel requested that the parties address four questions, including questions on the applicability of the

---

[3] The hearing was not transcribed.

9

implied covenant of good faith and fair dealing and whether "a 'gap' analysis [should] be applied" to resolve the dispute:

> (i) whether the situation underlying the arbitration was contemplated by the parties at the time they negotiated and executed the PLA, i.e., that TiVo would be compensated (via litigation in which the Goldwasser patent was not asserted) based on a third party's use of "DVR functionality" and that such compensation would trigger no royalty obligation to the Goldwassers;
> (ii) should a "gap" analysis be applied to the contract if the contract did not address the above scenario and if so how should it be applied ?
> (iii) given the existing arguments concerning whether the outcome of the TiVo/EchoStar litigation might be construed as having created an implied or compulsory license, should consideration be given as well to the concept of a "constructive" license (applying Black's Law Dictionary's definition of "constructive") and/or "defacto" license; in other words, are such doctrines recognized in the law and if so what are their relevance, if any, in the circumstances of this case.
> (iv) in light of the fact that the PLA's NLR provisions, read in conjunction with the duty of good faith inherent in every contract, gave TiVo complete discretion as to whether or not to assert the Goldwasser patent in any given litigation, do TiVo's reasons for not asserting the Goldwasser patent in the EchoStar litigation have any relevance here, and if so, how should the Panel evaluate the reasons given?

Snader Decl. Ex. M.

27. Prior to the July 12th inquiry from the panel, no party argued, or even suggested, that a gap-filling analysis was appropriate or that the implied covenant of good faith and fair dealing was implicated in any way. Thus, no testimony was presented at the hearing on these topics, and none of the post-hearing briefing addressed these topics. Snader Decl. Exs. G-L, N-O. The parties submitted short statements addressing the panel's July 12th questions on July 30, 2012. Snader Decl. Exs. N and O. Notably, the Goldwassers stated that they did not contend that TiVo owed any duty to assert the Goldwasser Patent in litigation with EchoStar, and confirmed that it was not arguing that TiVo had acted in bad faith. Snader Decl. Ex. N at 15.

28. The Award and Dissent were subsequently issued on August 22, 2012. Snader Decl. Exs. P and Q.

D.  **The Award and Dissent**

29.     The Majority's Award concludes that "a portion of the money TiVo received from Dish/EchoStar via litigation was the functional equivalent of revenue that TiVo would have earned from the licensing arrangement it sought with Dish/EchoStar." Snader Decl. Ex. Q at 3. In other words, the Majority concluded that damages for past infringement of the TiVo Patent, not the Goldwasser Patent, were the "functional equivalent" of a license, which required payment of royalties. *Id.* According to the Majority, this payment obligation arose based on "the implied obligation of good faith." Specifically, the Majority states that "[a]bsent the implied obligation of good faith, [the Goldwassers'] entitlement to royalties would be subject to forces completely beyond their control, as there were no minimum royalty guarantees in the PLA." *Id.* at 4.

30.     Finally, the Majority reasoned that the EchoStar Settlement triggered a payment obligation despite occurring after the expiration of the PLA because "[t]he payment obligation at issue here 'arose' not when Dish/EchoStar agreed to write the settlement check, but when it manufactured TV DVRs using DVR Functionality during the term of the PLA." *Id.* Thus, the Majority's reasoned, TiVo had a payment obligation when the EchoStar DVRs rolled off the assembly line, which could be years before any agreement was in place between TiVo and EchoStar.

31.     The Majority failed to address, *inter alia*, the fact that TiVo did not and could not grant any rights to the Goldwasser Patent at the time of the EchoStar Settlement and the fact that rights to sue EchoStar for past infringement of the Goldwasser Patent, if any, reverted to the Goldwassers at expiration of the PLA.

32.     The Dissent eviscerated the Majority's reasoning and highlighted the many ways that the Award was contrary to both well known law and evidence.

33.     Initially, the Dissent notes that equating compensation for past infringement with a "license" is contrary to law. First, the Dissent notes that the basis of the Award – the EchoStar Settlement – was expressly disclaimed as a basis for recovery by the Goldwassers. Thus, the Majority "resurrect[ed] [the EchoStar Settlement] on its own basis for its award, despite estoppel of the Goldwassers from doing so." Snader Decl. Ex. P at 4. Second, the Dissent explains that the payment of damages is not the "functional equivalent" of a license, but its antithesis. *Id.* at 4-6. "The Majority cites no precedent to support its proposition, barely acknowledges (in one footnoted instance) and fails to meaningfully distinguish the authority placed before it that expressly contradicts the conclusion." *Id.* at 4.

34.     The Dissent goes on to explain why reliance on the covenant of good faith and fair dealing is misplaced: (1) "the Goldwassers never contended that TiVo breached its obligation of good faith and fair dealing"; (2) "the Majority's reliance on the implied covenant of good faith and fair dealing here disregards applicable New York law in several respects;" (3) a gap filling analysis is not applicable where, as here, "an essential term is not at issue"; and (4) "the Majority's approach also is advanced in disregard of additional applicable New York precedent," including the principles that contracts should be enforced as written and not construed to reach commercially absurd results. *Id.* at 6-14.

35.     According to the Dissent, in sum, "the Majority improperly grounds its award on a theory that contradicts the express position of the Goldwassers ...; the express terms of the PLA ...; contrary to the actual evidence...; and procedurally on a timing rationale that was never raised or vetted in the proceedings." *Id.* at 14. Thus, "[t]he Majority thus awards the

Goldwassers millions of dollars in compensation by creating an implied term that comports with their sense of what is just and fair, but which in doing so disregards New York's law of contract construction and federal patent law." *Id.* at 15.

## COUNT I

36. TiVo realleges and incorporates by reference the allegations in Paragraphs 1-35 above.

37. An arbitration award can be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).

38. The Majority "refus[ed] to hear evidence pertinent and material to the controversy." Thus, the Award should be vacated.

39. The Majority refused to hear pertinent and material evidence by basing the Award on a theory – the implied covenant of good faith and fair dealing – not raised by any party. Indeed, the panel only hinted at theory in their July 12th inquiry, which came after the evidentiary hearing and scheduled post-hearing briefing.

40. By basing the Award on a theory not identified by any party, the Majority effectively prevented TiVo from presenting material and relevant evidence on that theory.

## COUNT II

41. TiVo realleges and incorporates by reference the allegations in Paragraphs 1-40 above.

*CONFIDENTIAL* – ▇▇▇▇▇▇▇▇▇

42. An arbitration award can be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

43. The Majority "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Thus, the Award should be vacated.

44. The Majority exceeded their powers in basing the Award on a claim not advanced by any party. That claim is that the implied obligation of good faith and fair dealing created the purported payment obligation. No party argued that the implied obligation of good faith and fair dealing was implicated in the arbitration any way until the panel's July 12th inquiry, which occurred after the evidentiary hearing.

45. The Majority exceeded their powers in basing the Award on a claim specifically disclaimed by the Goldwassers. The Goldwassers clearly and unequivocally disclaimed reliance on the EchoStar Settlement as a basis for payment.

46. The Majority exceeded their powers in basing the Award on reasoning and conclusions contrary to New York law.

47. The PLA requires that it "shall be interpreted, governed by and enforced in accordance with and consistent with the laws of the State of New York." Snader Decl. Ex. A § 16 (emphasis added). Any interpretation of the PLA that is contrary to and/or inconsistent with New York law exceeds the powers of the panel. The Majority's interpretation of the PLA is contrary to and/or inconsistent with New York law in at lest the following respects: the Majority's interpretation creates duties under the implied covenant of good faith and fair dealing inconsistent with the PLA's express terms; the Majority's interpretation results from a gap filling

*CONFIDENTIAL –* ████████

analysis for a non-essential term and where the PLA was admittedly clear and enforceable without gap filling; and the Majority's interpretation produces a commercially absurd result.

### COUNT III

48. TiVo realleges and incorporates by reference the allegations in Paragraphs 1-47 above.

49. An arbitration award can be vacated when it embodies a manifest disregard of the law.

50. The law is well defined, explicit, and clearly applicable that patent infringement, a judicial finding of patent infringement, and/or payment of damages for patent infringement does not constitute a license. Patent infringement is the antithesis of a patent license.

51. TiVo cited to the panel extensive case law that patent infringement, a judicial finding of patent infringement, and/or payment of damages for patent infringement does not constitute a license.

52. The Majority's Award constitutes a manifest disregard of the law in ignoring the law cited by TiVo and equating payment of damages for past infringement with a license.

53. Well defined, explicit, and clearly applicable New York law is that gap filling can only be used to supply an omitted essential term.

54. TiVo cited to the panel New York law that gap filling can only be used to supply an omitted essential term.

55. The Majority ignored New York law that gap filling can only be used to supply an omitted essential term.

56. Well defined, explicit, and clearly applicable New York law is that the duties imposed by the implied covenant of good faith and fair dealing cannot be inconsistent with the agreement's express terms.

57. TiVo cited to the panel New York law that the duties imposed by the implied covenant of good faith and fair dealing cannot be inconsistent with the agreement's express terms..

58. The Majority ignored New York law that the duties imposed by the implied covenant of good faith and fair dealing cannot be inconsistent with the agreement's express terms.

59. Well defined, explicit, and clearly applicable New York law is that a contract should not be construed to achieve a commercially absurd result.

60. The Majority ignored New York law in construing the PLA to reach a commercially absurd result.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

(a) Enter an order vacating the Award pursuant to 9 U.S.C. § 10(a);

(b) Enter an order vacating the Award because it embodies a manifest disregard of the law; and

(c) Grant such other relief as it deems just and proper.

*CONFIDENTIAL* – ████████████

Date: September 21, 2012

*[signature]*
Jessica L. Margolis
WILSON SONSINI GOODRICH & ROSATI, P.C.
1301 Avenue of the Americas, 40th Floor
New York, New York
Phone: (212) 999-5800
Fax: (212) 999-5899
Email: jmargolis@wsgr.com

Michael B. Levin (*Pro Hac Vice Admission to be sought*)
Wilson Sonsini Goodrich & Rosati, P.C.
650 Page Mill Road
Palo Alto, CA 94304
Phone: 650-320-4929
Fax: 650-493-6811
E-mail: mlevin@wsgr.com

Larry L. Shatzer (*Pro Hac Vice Admission to be sought*)
Shaun R. Snader (*Pro Hac Vice Admission to be sought*)
Wilson Sonsini Goodrich & Rosati, P.C.
1700 K Street, NW, Fifth Floor
Washington, DC 20006
Phone: 202-973-8800
Fax: 202-973-8899
E-mail: lshatzer@wsgr.com
E-mail: ssnader@wsgr.com

*Attorneys for TiVo Inc.*