# EXHIBIT A

Document1

## PATENT LICENSE AGREEMENT

This PATENT LICENSE AGREEMENT ("**Agreement**") is executed this March 12, 2004 ("**Effective Date**"), between **TIVO INC.**, a Delaware corporation with principal offices located at 2160 Gold Street, Alviso, California 95002 ("**TiVo**") and **GOOD INVENTIONS LLC**, a New York limited liability corporation ("**Good Inventions**"), **MR. ERIC GOLDWASSER** ("**Mr. Goldwasser**") and **MS. ROMI GOLDWASSER** ("**Ms. Goldwasser**"), individuals, each at the following address: c/o Melvin C. Garner, Esq., Darby & Darby, 805 Third Avenue, New York, New York 10022 (Good Inventions, Mr. Goldwasser and Ms. Goldwasser are referred to herein collectively as the "**Goldwassers**").

**WHEREAS**, the Goldwassers are the owner of U.S. Patent No. 5,241,428. The subject matter of such patent, any foreign counterparts, any continuations, divisions, continuations-in-part, reissues and reexaminations thereof, the right to file, prosecute, receive, defend and enforce letters patent and their foreign equivalents, and all rights arising therefrom and related thereto, are hereinafter referred to as the "**Patent**"; and

**WHEREAS**, TiVo desires to secure the sole and exclusive (even as to the Goldwassers) worldwide license to exercise all of the Goldwassers' rights in and to the Patent on the terms and conditions set forth herein, and the Goldwassers desire to grant such a license to TiVo;

**NOW, THEREFORE**, in consideration of the foregoing recitals, the mutual agreements herein and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, agree as follows:

1. **DEFINITIONS.** As used in this Agreement, defined terms have the following meanings:

    1.1 "**Affiliate**" means, with respect to a party to this Agreement, a person or entity that controls, is controlled by or is under common control with, such party.

    1.2 "**DVR**" means a digital video recorder, personal computer or similar device with DVR Functionality, whether through software, hardware or other means.

    1.3 "**DVR Functionality**" means functionality that enables consumers to record television programs to a hard disk drive and control a TV display, including pausing, fast forwarding and rewinding live television.

    1.4 "**Television Boxes**" means a satellite or cable television receiver, or any future device, the primary purpose of which is to receive and decode video signals (e.g., television signals) and to display such signals on an attached or otherwise connected television set.

    1.5 "**TiVo DVRs**" means DVRs carrying only the TiVo brand. "**OEM DVRs**" means DVRs sold by third parties with DVR Functionality, licensed from TiVo. "**TV DVRs**" means Television Boxes that include DVR Functionality, licensed from TiVo. Any device which is within both the definition of OEM DVR and TV DVR, shall be considered to be a TV DVR for purposes of this Agreement.

    1.6 "**Patent**" has the meaning set forth in the recitals.

2. **GRANT OF LICENSE.** Each the Goldwassers, on behalf of itself, himself or herself, one another and any of their Affiliates with rights in or to the Patent, hereby grants to TiVo and its Affiliates the sole and exclusive (even as to the Goldwassers), worldwide, perpetual, irrevocable, transferable, right and license (including the right to sublicense through multiple tiers) in and to all rights and interests in the

Patent (the "**License**"). Without limiting the foregoing, the License includes, without limitation, the sole and exclusive right (even as to the Goldwassers) to (a) practice the Patent, in any manner, including, but not limited to, the right to develop, use, make, have made, sell, offer for sale, import into the United States, distribute and otherwise exploit any and all products incorporating or otherwise using the Patent and the right to license and sublicense through multiple tiers others to do the same, (b) exclude other from engaging in any or all of the foregoing, and (c) file, maintain, prosecute, defend and enforce the Patent, and all intellectual property rights related thereto, in TiVo's name.

3. **RELEASE**. Each of the Goldwassers, on behalf of itself, himself or herself, one another, and their Affiliates, representatives, agents, successors-in-interest, heirs and assignees, hereby releases and forever discharges (a) TiVo, its Affiliates, licensees, sublicensees and customers from and against any claim, liability, damage or other suit arising out of or in connection with the Patent and any acts, omissions or circumstances related thereto, and (b) TiVo from and against any claim, liability, damage or other suit arising out of or in connection with any other patents or intellectual property rights owned or controlled by the Goldwassers, and any acts, omissions or circumstances related thereto. Each of the Goldwassers covenants and agrees not to commence, file, participate or assist in any suit or similar proceeding in which any claim described above is alleged or asserted against TiVo or, in the case of clause (a) above, its Affiliates, licensees, sublicensees and customers (the "**Release**").

4. **PAYMENT**. The payment terms for this Agreement are set forth on Attachment One, attached hereto and incorporated herein by this reference.

5. **TAXES**. The Goldwassers will be solely responsible for any taxes levied on any payments made to the Goldwassers by TiVo in connection with this Agreement, including but not limited to, pursuant to the Stock Issuance Agreement.

6. **MARKING.** TiVo agrees that within ninety (90) days of the Effective Date, it will use its commercially reasonable efforts to begin marking products then being manufactured (but not any previously manufactured products) with the number(s) of the Patent or any other patents licensed herein having a claim that covers the products. TiVo further agrees that it will use its commercially reasonable efforts to obligate its Affiliates, licensees, sublicensees and customers to begin marking licensed products with the number(s) of the Patent or any other patents licensed herein having a claim that covers the products. Such marking shall conform to the provisions of the United States statutes relating to the marking of patented devices.

7. **GOLDWASSERS' OBLIGATIONS.**

7.1 Representations and Warranties. Each of Good Inventions, Mr. Goldwasser and Ms. Goldwasser, jointly and severally, hereby represents and warrants to TiVo that (a) the Goldwassers own all of the right, title and interest in and to the Patent and have the necessary power and authority to enter into this Agreement and to grant the License herein and have no obligations to grant licenses or transfer rights other than the License, (b) no prior or other licenses to the Patent, or covenants not to assert the Patent, have been granted to any other party and no other party has any right or authority to do so during the Term of this Agreement, (c) the Goldwassers have disclosed to TiVo in writing any and all facts known to the Goldwassers and any party involved with the prosecution of the Patent which may limit the validity, enforceability or scope of the intellectual property rights acquired by TiVo in the Patent including prior art references or other publications and all related search results; prior public use, sales, offers for sale, questions of inventorship, and prior rights, licenses, covenants not to assert or obligations to license third parties, (d) all of the applications and registrations relating to Patent are subsisting and unexpired, free of all liens, claims, or encumbrances of any nature, and have not been abandoned in any respect (including without limitation failure to pay timely any administrative

CONFIDENTIAL                                                                                          TiVo-GW 008937

fees), (e) to the Goldwassers' knowledge, no judgment, decree, injunction, rule or order has been rendered by any government or any agency, court, tribunal, commission, board, bureau, department, political subdivision or other instrumentality of any government (including any regulatory or administrative agency), whether federal, state, multinational (including, but not limited to, the European Community), provincial, municipal, domestic or foreign that would or does limit, cancel or question the validity of any of the rights in and to the Patent in any respect; and (f) neither the Goldwassers nor any party involved in the prosecution of the Patent has received notice of any pending or threatened suit, action or proceeding that seeks to limit, cancel or question the validity of any of the rights in and to, the Patent, and to each of the Goldwassers' knowledge, there is no basis for any such suit, action or proceeding.

7.2 Covenants. Each of the Goldwassers, jointly and severally, covenants and agrees that, during the Term of this Agreement, the Goldwassers, and each of them (a) shall not grant, or attempt to grant, any licenses or convey any rights under the Patent to any third party (including but not limited to covenants not to assert the Patent), (b) shall not sell, assign, convey or otherwise transfer (or attempt to do so) the Patent or the Goldwassers' rights or obligations under this Agreement to any third party, (c) shall not practice the Patent during the Term of this Agreement nor permit any third party to do so, (d) conditioned upon TiVo's compliance with this Agreement, shall not assert against TiVo any rights that the Goldwassers may have under any other patents or intellectual property, and shall not permit or assist any third party in doing so, and (e) shall, within thirty (30) days of the Effective Date, provide TiVo with all filings, drafts, drawings, information, correspondence, materials, files and other documentation relating to or arising from the Patent and the prosecution thereof ("**Patent Materials**"), and shall cause any party involved in the prosecution of the Patent to, within thirty (30) days of the Effective Date, provide TiVo with all Patent Materials in such party's possession..

7.3 Indemnification. Each of the Goldwassers, jointly and severally, hereby indemnifies and agrees to hold TiVo harmless from and against any and all claims, suits, damages, liabilities, losses, costs and expenses (including TiVo's attorneys' fees and costs) incurred by TiVo arising out of or in connection with the falsity, inaccuracy or violation of any of the Goldwassers' representations and warranties set forth in Section 7.1 above and/or the violation or non-performance of the Goldwassers' covenants and agreements set forth in Section 7.2 above.

7.4 Consulting Services. At TiVo's request, each of Mr. Goldwasser and Ms. Goldwasser shall provide consulting services to TiVo in connection with the filing, prosecution, maintenance, defense, enforcement, practice, commercialization and exploitation of the Patent and products practicing the Patent. The Goldwassers' consulting services under this Agreement shall be provided to TiVo on an exclusive basis. The Goldwassers shall not provide consulting, advisory or similar services (whether as an employee, officer, director, equity-owner, partner, contractor, consultant or otherwise) related to the subject matter of the Patent or any of TiVo's products or services to any third party. Without limiting the generality of the foregoing, during the Term of this Agreement, the Goldwassers shall not engage in any activities that are or are reasonably likely to be directly competitive or harmful to TiVo or its business. The Goldwassers shall be entitled to reimbursement of their direct, reasonable, out-of-pocket costs and expenses incurred in connection with these consulting services. Each of the Goldwassers shall be entitled to charge TiVo $400/hr for any consulting services they provide in excess of 200 hours each per calendar year for services connected with defense and enforcement, and 50 hours for all other services combined. Where necessary or advisable, Mr. Goldwasser and Ms. Goldwasser may perform their consulting services through Good Inventions.

**8. MAINTENANCE OF THE PATENT.** As the sole and exclusive (even as to the Goldwassers) licensee to the Patent, TiVo has the sole and exclusive right (even as to the Goldwassers),

CONFIDENTIAL                                                                                                                    TiVo-GW 008938

in TiVo's name, to: (a) enforce the Patent against third parties, (b) to defend the Patent in any claim or proceeding involving or alleging the unenforceability or invalidity of the Patent, including but not limited to, any reexamination or reissue proceedings and (c) defend the Patent against any claim that the practice of the Patent by TiVo or its Affiliates, licensees, sublicensees or customers infringes or violates any third party intellectual property rights. TiVo shall use commercially reasonable efforts to maintain the Patent, pay all applicable maintenance fees and prevent the lapse of the Patent. TiVo may commence, settle, terminate or otherwise resolve any claims, suits or other proceedings involving the Patent at such time and on such terms and conditions as TiVo shall determine in its sole and absolute discretion, and at all times has the right, power and authority to control such proceedings and take such actions in connection therewith as it deems necessary or advisable. TiVo's actions taken under this paragraph shall be at its sole cost and expense. The Goldwassers shall cooperate with TiVo in connection with matters arising in connection with this paragraph and TiVo shall reimburse the Goldwassers for their reasonable out-of-pocket expenses incurred in connection therewith. Each of the Goldwassers hereby agrees to execute, acknowledge, and/or deliver such additional documents as TiVo may deem necessary to evidence, perfect, record or effectuate TiVo's rights in the Patent, and to perform its rights and responsibilities hereunder. Further, each of Good Inventions, Mr. Goldwasser and Ms. Goldwasser hereby appoints TiVo and grants to TiVo the right, as their attorney-in-fact, to execute, acknowledge, deliver, and record in the United States Copyright Office, United States Patent and Trademark Office, their foreign equivalents or elsewhere, any such documents that the Goldwassers fail, are unable, or unwilling to execute, acknowledge, and/or deliver upon TiVo's request or as otherwise deemed necessary by TiVo in its reasonable discretion to maintain the Patent, so long as such documents do not disclaim or invalidate the Patent.

### 9. TERM AND TERMINATION.

9.1  **Term**. The License, the Release and the parties' respective rights and obligations hereunder commence on the Effective Date and terminate as set forth below (the "**Term**").

9.2  **Termination**. Except as otherwise set forth herein (and subject to the survival provisions contained herein), this Agreement terminates

a) upon the first to occur of (i) the expiration of the last patent licensed hereunder or (ii) an earlier final and unappealable judgment of invalidity or unenforceability of the Patent (or if the Patent includes more than one patent, a final and unappealable judgment of invalidity or unenforceability of the last patent licensed hereunder);

b) with respect to the Goldwassers' obligation to provide consulting services and TiVo's obligation to pay Litigation Recovery Payments, after the conclusion of all litigation in which the Patent is asserted or otherwise involved, which is commenced during the term of this Agreement, before the expiration of the patent but continues thereafter;

c) at the option of the Goldwassers, if TiVo fails to make the payments provided in Attachment One: Payment Terms, after such notice and failure to cure within thirty (30) days of such notice. Notwithstanding the foregoing, if the alleged reason for TiVo's failure to pay relates to a dispute over the obligation to make, or the amount of, the payment, and TiVo requests arbitration under Section 17, then Section 9.2(d) shall apply and no termination right shall arise unless TiVo is judged by an arbitrator or court of competent jurisdiction to have materially breached its payment obligations in this agreement, and TiVo fails to promptly make such payment or otherwise comply with the remedy ordered by the arbitrator or court;

d) at the option of the non-breaching party, if TiVo or the Goldwassers are judged by an arbitrator or court of competent jurisdiction to have materially breached any of the

CONFIDENTIAL                                                                                             TiVo-GW 008939

provisions of this agreement, and fail to promptly correct such breach or otherwise comply with the remedy ordered by the arbitrator or court; and

e) at the option of the Goldwassers upon written notice to TiVo, if TiVo commences an action or a proceeding to invalidate the Patent; *provided however*, that TiVo may commence a reexamination or reissue of the Patent and doing so shall not give rise to any termination right hereunder. Notwithstanding the foregoing, if the parties disagree as to whether TiVo has commenced such an action or proceeding, and arbitration is requested under Section 17, then Section 9.2(d) shall apply and no termination right shall arise unless TiVo is judged by an arbitrator or court of competent jurisdiction to have commenced such an action or proceeding, and TiVo fails to promptly discontinue such action or proceeding or otherwise comply with the remedy ordered by the arbitrator or court.

Except as expressly set forth in Section 9.2 and subject to the dispute resolution provisions set forth in Section 17, without limiting any other rights or remedies the parties may have, neither party may terminate this Agreement or avoid any of its obligations hereunder, for any reason and each party hereby forever waives and foregoes any right it may have to rescind the Agreement. For the sake of clarity, neither Good Inventions, Mr. Goldwasser nor Ms. Goldwasser acting alone may terminate this Agreement; the Goldwassers must act in concert to terminate this Agreement.

9.3   **Survival**. The following sections of this Agreement survive termination of this Agreement for any reason: Section 3 (with respect to all of the parties' activities prior to the date of termination), Section 4 (with respect to payment obligations which arise prior to termination), as well as Sections 5, 7.1-7.3, this Section 9.3, 10, 16 and 19.

**10. CONFIDENTIALITY.** The existence and contents of this Agreement and any and all communications, payments or other disclosures between the parties are confidential and are subject to the terms and conditions of that certain Non-Disclosure Agreement entered into between the parties on November 6, 2003 (the "**NDA**"); *provided, however*, without limiting the generality of the foregoing, that notwithstanding the NDA, TiVo may: (a) publicize the fact that it has entered into the sole and exclusive license for the rights to the Patent; and (b) make such disclosures (i) as it deems reasonable or necessary in connection with any actions, suits or proceedings involving the Patent, (ii) as it deems reasonable or necessary in connection with the negotiation and execution of licenses, sublicenses, manufacturing agreements, distribution agreements and similar commercial agreements in the ordinary course of its business and in compliance with the terms and conditions hereof, (iii) as required by any court or other governmental body; (iv) as otherwise required by applicable law; (v) to TiVo's legal counsel; (vi) pursuant to the rules and regulations of any stock association or exchange on which TiVo's stock is traded; (vii) in confidence, to TiVo's accountants, banks, and financing sources and their advisors; (viii) in confidence, in connection with the enforcement of this Agreement or rights under this Agreement; or (ix) in confidence, in connection with a merger or acquisition of TiVo or proposed merger or acquisition of TiVo.

Provided further, however, without limiting the generality of the foregoing, that notwithstanding the NDA, the Goldwassers may (a) publicize the fact that they have entered into the sole and exclusive license for the rights to the Patent; and (b) make such disclosures (i) as required by any court or other governmental body; (ii) as otherwise required by applicable law; (iii) to the Goldwassers' legal counsel; (iv) pursuant to the rules and regulations of any stock association or exchange on which TiVo's stock is traded; (v) in confidence, to the Goldwassers' accountants, banks, and financing sources and their advisors; (vi) in confidence, in connection with the enforcement of this Agreement or rights under this Agreement.

**11. ENTIRE AGREEMENT.** This Agreement, together with the NDA and that certain Stock Issuance Agreement set forth as Exhibit A to this Agreement and incorporated herein by this reference

CONFIDENTIAL                                                                                                                                        TiVo-GW 008940

(the "**Stock Issuance Agreement**") constitutes the entire understanding of the parties with respect to the subject matter of this Agreement and supercedes all prior and contemporaneous agreements, understandings, representations and expectations, written or oral. Without limiting the generality of the foregoing, the letter agreement between the parties dated December 22, 2003 is hereby terminated and of no further force and effect.

**12. AMENDMENT**. This Agreement may be amended only by means of a written instrument signed by both parties and clearly identified as an amendment hereof.

**13. WAIVER; SEVERABILITY.** To be effective, any waiver of a party's rights or remedies hereunder must be in writing and clearly identified as a waiver of this Agreement. The failure of either party at any time to require performance by the other party of any obligation provided for herein in no way affects the full right to require such performance at any time thereafter nor shall the waiver by a party of a breach of any provision hereof by the other party constitute a waiver of any succeeding breach of any provision of this Agreement by the other party. If any provision of this Agreement is determined by an arbitrator or court of competent jurisdiction to be invalid or unenforceable, such provision shall severed from this Agreement and replaced by a provision that most closely approximates the parties' original intention, as permitted by law. The rest of this Agreement shall remain in full force and effect.

**14. NOTICES.** All notices or other communications that are required or permitted under this Agreement shall be in writing and are effective upon receipt by the party to whom the notice is given. Unless written notification of a change of address is received by a Party, notice under this agreement shall be deemed sufficient, if addressed to:

    For TiVo:

    Matthew Zinn, Esq.
    TiVo Inc.
    2160 Gold Street
    Alviso, California 95002

    For the Goldwassers:

    Mr. Eric Goldwasser
    993 Barberry Road
    Yorktown Heights, NY 10598

    With a copy to:

    Melvin C. Garner, Esq.
    Darby & Darby P.C.
    805 Third Avenue
    New York, NY 10022

**15. ASSIGNMENTS.** TiVo has the right to license and sublicense (through multiple tiers) its rights under this Agreement or any part thereof; *provided* that TiVo shall remain fully responsible for compliance with this Agreement by its licensees and sublicensees. TiVo may transfer or assign its rights hereunder in connection with a merger, acquisition, reorganization or sale of all or substantially all of its assets or equity. All of Mr. Goldwasser's and Ms. Goldwasser's obligations, releases and covenants set forth in this Agreement are personal and may not be assigned, delegated or otherwise transferred to any third party without TiVo's prior written consent, which consent may be withheld in TiVo's sole and

1100645

CONFIDENTIAL

TiVo-GW 008941

absolute discretion. However, Mr. Goldwasser and Ms. Goldwasser may assign the Patent and the right to receive income under this agreement to Good Inventions LLC; *provided* that Good Inventions shall not be permitted to subsequently assign the Patent without TiVo's prior written consent, which consent shall not be unreasonably withheld. This Agreement binds and inures to each party's Affiliates, representatives, agents and any successors-in-interest or permitted assignees to such party's right or interest, or any portion thereof, in the Patent.

16. **GOVERNING LAW.** This Agreement has been made and entered into under the laws of the State of New York and shall be interpreted, governed by and enforced in accordance with and consistent with the laws of the State of New York, which shall apply in all respects, including statutes of limitation, to all disputes or controversy arising out of or pertaining to this Agreement.

17. **ARBITRATION AND VENUE.** In the event that a party breaches its obligations under this Agreement, other than as provided for in Section 9.2, the other party shall provide written notice thereof to the party in breach and the party in breach shall have thirty (30) days to cure such breach. If the breach remains uncured after such time, or is incapable of cure, or if the parties remain in dispute under the Agreement, either may require binding arbitration in accordance with the rules then pertaining of the American Arbitration Association (the "**Association**"), which rules are incorporated herein by reference. The parties agree to permit the Association to make arrangements for any such arbitration to be held in New York, New York. Any judgment to be entered in court upon any award rendered by all or a majority of the arbitrators shall be entered in a state or federal court located in New York, New York. Any action brought to enforce any aspect of this Agreement shall be brought in the state or federal courts located in New York, New York. The parties hereby consent to the exclusive jurisdiction thereof and waive any objection to jurisdiction or venue arising therefrom.

18. **HEADINGS.** The headings in this Agreement are for convenience of reference only, shall not be regarded as part of this Agreement, and shall have no limiting, enlarging or modifying effect upon the interpretation of this Agreement.

19. **RELATIONSHIP OF THE PARTIES.** Neither of the parties shall be deemed, in any way, nor construed to be, the partner, joint venturer, agent, employee or servant of the other, their entire relationship being that of licensor and licensee of the Patent. Each party is responsible for its own fees, expenses and other costs incurred in connection with the negotiation, execution and delivery of this Agreement (and all related meetings, discussions and negotiations). Each party represents that there are no fees, commissions or other amounts payable to any party as a broker, finder or for similar services rendered in connection with the subject matter of this Agreement. Each party has been represented by counsel and understands and is aware of its rights and responsibilities under this Agreement, including but not limited to, the scope and effect of the License and Release.

[Signature Page Follows]

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date set forth above.

**MR. ERIC GOLDWASSER**

By: _[signature]_

[Notary Seal]   RICHARD J. KATZ
NOTARY PUBLIC, State of New York
No. 02KA6092499
Qualified in Suffolk County
Commission Expires May 19, 2007

_[signature]_
March 12, 2004

**TIVO INC.**

By: _[signature]_

Name: Mike Ramsey

Title: CEO

[Corporate Seal]

**MS. ROMI GOLDWASSER**

By: _[signature]_

[Notary Seal]

OFFICIAL SEAL
ANGELA ALLEN
NOTARY PUBLIC-OREGON
COMMISSION NO. 372949
MY COMMISSION EXPIRES SEPTEMBER 23, 2007

_[signature]_ 3/13/04

**GOOD INVENTIONS LLC**

By: _[signature]_

Its: MANAGING MEMBER

[Corporate Seal]

{W:\03630\800F174000\00150060.D OC} 1100645

- 8 -

CONFIDENTIAL                                                                                                    TiVo-GW 008943

## Attachment One: Payment Terms

In consideration for the License (during the term of the Patent), the Release, the consulting services and performance of the Goldwassers' other obligations hereunder, TiVo agrees to pay the Goldwassers the following:

      **1.**     **Royalties.** TiVo shall pay to the Goldwassers (on the payment terms set forth below) royalties on behalf of TiVo and its licensees and sublicensees for (a) TiVo DVRs sold, (b) OEM DVRs and TV DVRs manufactured, and (c) DVRs transferred without charge beyond the number specified in Paragraph 1(a) below, on or after January 1, 2004 through the expiration date of U.S. Patent No. 5,241,428 (which expiration date, as of the Effective Date of this Agreement, is March 12, 2011) (the "Termination Date") ("Royalties"):

[REDACTED]

      *a.*     *Calculation.* The Royalties shall be accrued once for each qualifying unit. Royalties shall not be paid for TiVo DVRs that are engineering demonstration units or prototypes for which TiVo receives no payment and which are not provided to consumers. Further, Royalties shall not be paid for up to 20,000 units per year for TiVo DVRs that are allowances or promotional give-aways, for which TiVo receives no payment. Royalties for each payment period shall be net of replacements, returns, refunds and TiVo shall not be responsible for Royalties on any unit or product bundle for which a Royalty or Litigation Recovery Payment has already been paid. It is the parties' intention that this Section 1(a) be interpreted in a manner that causes TiVo (on behalf of itself and its licensees and sub-licensees) to pay Royalties at the rate set forth above once, whether from license revenue or litigation recovery, (but not more than once) per DVR unit. If TiVo sells, or a TiVo licensee manufactures, a DVR with DVR Functionality and at sale by TiVo, or manufacture by a TiVo licensee such DVR Functionality is not activated, a Royalty shall be due to Goldwassers only upon the first activation of such DVR Functionality. TiVo shall keep records of all such activations and shall require its licensees to keep records of all such activations and to report such activations to TiVo. Further, TiVo is required to report all such activations by it and its licensees to the Goldwassers. For any DVR manufactured during the term of this Agreement, but activated subsequent to termination, the obligation of TiVo to pay Royalties on such a DVR survives termination pursuant to Section 9.3 (Survival) of this Agreement.

      *b.*     *Time of Payment.* Payments of Royalties accrued hereunder shall be made quarterly by TiVo, and by TiVo on behalf of its Affiliates, licensees, sublicensees or customers, to the Goldwassers or their designee no later than sixty (60) days following the end of each calendar quarter. Payment shall be accompanied by a report of unit sales of TiVo DVRs, and accompanied by a report of manufactured units for OEM DVRs and TV DVRs and the computation of the Royalties due therefore during the preceding calendar quarter.

CONFIDENTIAL      TiVo-GW 008944

2.      **TiVo Stock.**  Pursuant to the Stock Issuance Agreement, TiVo shall issue to Good Inventions LLC shares of TiVo common stock ▮ valued at the average closing price of TiVo common stock shares over the last twenty (20) trading days preceding the Effective Date of this Agreement, as more fully set forth in the Stock Issuance Agreement.

3.      **Litigation Recovery Payment.**  During the Term of this Agreement, TiVo will pay the Goldwassers an amount equal to forty percent (40%) of any Net Litigation Recovery (defined below) actually received by TiVo and directly attributable to the enforcement of the Patent against third parties ("**Litigation Recovery Payment**").  Any recovery actually received by TiVo and not apportioned by the court among all intellectual property rights asserted by TiVo, and any recovery from a settlement agreement, will be fairly and reasonably apportioned by TiVo in good faith among all intellectual property rights asserted by TiVo and not conclusively determined to be non-infringed, invalid or unenforceable based on the prominence of such intellectual property rights.  Any disagreement by Goldwassers as to whether the apportionment determined by TiVo fairly represents the prominence of the Patent shall be subject to arbitration under the provisions of Paragraph 17 of the Patent License Agreement.  Except as expressly set forth herein with respect to the Litigation Recovery Payment, TiVo shall be entitled to receive and retain all payments, awards, judgments, settlements and other amounts received or otherwise recovered in connection with litigation arising out of or involving the Patent.

   a.     *Minimum Payment*.  Regardless of the portion of the Net Litigation Recovery directly attributable to the Patent, TiVo shall pay the Goldwassers a guaranteed minimum Litigation Recovery Payment of ten percent (10%) of any Net Litigation Recovery actually received by TiVo in any litigation in which TiVo asserts the Patent, regardless of how such Net Litigation Recovery is allocated among all patents and other intellectual property rights asserted, *provided, however*, that the Patent is not conclusively determined to be non-infringed, invalid or unenforceable.

   b.     *Non-Infringement*.  If the Patent is conclusively determined to be non-infringed, invalid or unenforceable in any particular litigation, then no Litigation Recovery Payment arising from that litigation shall be owed with respect to the Patent.  For the avoidance of doubt, the minimum payment described in Attachment One, Section 3a above shall not apply in any litigation if the Patent is conclusively determined to be non-infringed, invalid or unenforceable in such litigation.

   c.     *Payment Terms*.  Litigation Recovery Payments shall be made within forty-five (45) days of TiVo's actual receipt of the corresponding Net Litigation Recovery arising from a final, non-appealable judgment, award or settlement.  To the extent that TiVo receives a Net Litigation Recovery in installments, TiVo shall pay the Goldwassers its percentage portion of each installment of such Net Litigation Recovery within forty-five (45) days of receipt of the corresponding installment.  Attachment One, Section 3 shall at all times be interpreted in a manner that does not cause or require TiVo to pay Litigation Recovery Payments (a) for amounts that it has not yet received in cash or other non-cash compensation, and (b) in excess of forty percent (40%) of the aggregate corresponding Net Litigation Recovery.  TiVo shall maintain sufficient records to verify its Litigation Recovery Payments hereunder.  Subject to any confidentiality obligations to which TiVo, despite its commercially reasonable efforts, is subject, TiVo shall provide the Goldwassers with reasonable access to such records at the Goldwassers' sole cost and expense.  However, nothing herein shall prevent Goldwassers from seeking permission of a party or a court of competent jurisdiction to relieve such confidentiality obligations for the purpose of access by Goldwassers to such records.

   d.     *Definition of Net Litigation Recovery*.  As used in this Agreement, the term "**Net Litigation Recovery**" means the following: any cash payment or other judgment, award or settlement, including non-cash compensation, tangible benefits and intangible benefits actually received by TiVo and directly attributable to the enforcement of the Patent against third parties in pending or threatened litigation, arbitration or any other dispute resolution process, net of TiVo's direct, out-of-pocket fees,

1100645                                              - 10 -

costs and expenses incurred in connection with such litigation (except when such out-of-pocket fees, costs and expenses are reimbursed by a third party).

To the extent a settlement includes a product license for future manufacture or other arrangement for which TiVo receives per-unit royalties on products manufactured, with respect to such licensed products, TiVo shall pay to the Goldwassers the Royalties as set forth in Attachment One, Section 1 above in full satisfaction of TiVo's Litigation Recovery obligations for the future manufacture of such products. To the extent that a settlement allows for past or future manufacturing for which TiVo does not receive a per-unit royalty, or receives a per unit royalty less than the corresponding Royalty under Attachment One, but which includes a benefit that can be reasonably interpreted as leading to revenue from either licensees or consumers ( including, but not limited to subscriptions to TiVo services), then such benefit shall be considered an intangible benefit.

Notwithstanding the foregoing, TiVo shall not be obligated to make Litigation Recovery Payments on the reimbursement of expenses and other direct costs incurred, except when TiVo has previously deducted those expenses or costs in determining its net recovery. Nothing in this Agreement shall restrict or prevent TiVo's absolute right and discretion to settle claims on any terms and conditions as TiVo deems advisable, including settlements that include indirect, intangible or speculative benefits. Except that TiVo will take into account its obligations to Goldwasser (per the payment schedule in Attachment One) when negotiating a license with third parties or settling litigation. In this regard TiVo's obligation is to have a reasonable basis for its actions taken (or not taken) in connection with negotiating licenses and settling litigation. Subject to confidentiality restrictions, the parties will communicate in good faith about licensing and litigation strategies regarding pending litigation of the Patent. Further, the parties agree that from time to time, they may jointly seek the advice of legal counsel in connection with licensing, settlement or litigation strategies and if they seek such advice, the following principles shall apply: (1) the parties shall split the cost of such counsel, (2) the parties shall select a mutually acceptable attorney with sufficient experience on the subject matter at issue and who shall not have a prior relationship with either party or their existing legal counsel, (3) the parties shall seek and obtain such advice as quickly as practical and in a manner that does not delay or in any way hinder TiVo's licensing, settlement or litigation activities, and (4) such advice shall be obtained in a way that maintains all applicable confidentiality restrictions and privileges from discovery, acceptable to TiVo's litigation counsel.

*Intangible Benefits*   With respect to indirect, intangible or other speculative benefits (including, but not limited to intellectual property rights received, potential sales of TiVo subscriptions, marketing support or technology-sharing) the parties acknowledge and agree that many factors could give rise to such a transaction and the parties will apply the Guiding Principles (attached for reference only as Attachment Two, but which Guiding Principles shall not be interpreted as contractual obligations, representations or responsibilities of the parties) in an attempt to reach a fair and equitable resolution as to the extent of Royalty or Litigation Recovery Payments due thereunder. The parties may also look to the Guiding Principles in any other circumstance where there is a dispute or disagreement over how Litigation Recovery Payments or Royalties should be calculated.

*Tangible Benefits*   To the extent TiVo receives tangible, non-liquid benefits as a portion of the Net Litigation Recovery (including, but not limited to, personal property, debt instruments or restricted stock), TiVo shall have no obligation to make a Litigation Recovery Payment until TiVo collects or converts such benefits to cash, which TiVo may do at such time and on such terms as TiVo elects in its sole and absolute discretion, provided that such collection or conversion is not delayed for the sole purpose of avoiding payment to the Goldwassers hereunder. Nothing in this Agreement shall restrict or prevent TiVo's absolute right and discretion to use, maintain, exploit and dispose (or not dispose) of such benefits in any manner TiVo desires. However, at the termination of this Agreement, TiVo shall either make the Litigation Recovery Payment with respect to such benefits held by TiVo or alternatively, TiVo's payment obligation with respect to such benefits shall survive termination of this Agreement; *provided* that five years after the termination of this Agreement, if such tangible benefits have not been

CONFIDENTIAL                                                                                           TiVo-GW 008946

collected or converted to cash, TiVo shall make (at TiVo's option) a payment of the fair market value, a partial assignment or an in-kind distribution to the Goldwassers with respect to that portion of such tangible benefits from which the Goldwassers' right to payment is derived.

      *e.*     *Disclaimer*. TiVo makes no representations or warranties that it will be able to successfully assert the Patent against third parties or that it will be able to obtain any Net Litigation Recoveries arising therefrom. Under no circumstances shall TiVo be liable for any intangible, punitive, speculative, incidental, consequential, exemplary or indirect damages or liabilities, including but not limited to, lost profits, even if TiVo has been advised of the possibility and is aware of such, arising out of TiVo's strategies, decisions or settlements in connection with litigation and other proceedings, or TiVo's handling and maintenance of Net Litigation Recoveries. TiVo shall be considered a fiduciary of the Goldwassers only to the extent of making and verifying Royalty payments and Litigation Recovery Payments under this agreement and for no other purpose. TiVo warrants that nothing in its agreements with its current licensees prevents TiVo from paying the per-unit Royalties on all units manufactured on or after January 1, 2004.

    **4.**    **TiVo's Obligations to the Goldwassers.**

      *a.*     *Communications*. For the purposes of this Agreement, Mr. Goldwasser shall be the point of contact for TiVo unless and until Ms. Goldwasser informs TiVo differently in writing. TiVo shall comply with Mr. Goldwasser's instructions with respect to payments made hereunder, provided that all parties acknowledge and agree that as of the Effective Date and until TiVo receives written notice specifying different instructions, all payments shall be made payable to the order of Good Inventions LLC. TiVo shall have no liability for the apportionment of payments between the Goldwassers or any dispute arising between them. In the event of a dispute between the Goldwassers, or if TiVo receives conflicting instructions with respect to payments, TiVo shall be required, with no liability to TiVo, to place the payments in escrow (at the Goldwassers' cost and expense, provided that any interest earned on such escrowed payments shall accrue to the Goldwassers) and wait until the dispute is resolved (or until TiVo receives a court order or similar instructions which TiVo, in good faith, believes it is compelled to follow) before taking any action with respect to such payments.

      *b.*     *Records*. TiVo shall maintain sufficient records to verify its Royalty payments hereunder and shall provide the Goldwassers with reasonable access to such records at the Goldwassers' sole cost and expense. To the extent that TiVo has contractual rights to audit or inspect the books and records of third parties and subject to all applicable restrictions and limitations thereon, TiVo shall consider in good faith a reasonable request from the Goldwassers to exercise such rights in circumstances where the Goldwassers have reason to believe that a third party is under-reporting manufactured units to TiVo in such a way that it is causing TiVo to underpay royalties to the Goldwassers; provided that TiVo shall be reimbursed by the Goldwassers for any out of pocket costs and expenses incurred by TiVo in connection with such exercise. TiVo will use reasonable efforts to cause third parties to maintain sufficient records to verify Royalty payments hereunder.

      *c.*     *Payments*. TiVo will collect Royalty payments owed to Goldwassers by TiVo's Affiliates, licensees, sub-licensees and customers. TiVo will then transmit those Royalty payments owed by TiVo and its Affiliates, licensees, sub-licensees and customers to Goldwassers' designee Good Inventions LLC, within sixty (60) days of the end of each quarter.

CONFIDENTIAL     TiVo-GW 008947

Attachment Two: Guiding Principles

**Guiding Principles**. The parties recognize and acknowledge that settlements can take numerous forms that are difficult to anticipate. While disagreements between the parties regarding settlements ultimately are subject to arbitration (where each party pays its own expense), the parties agree that the resolution of ambiguities in a particular Net Litigation Recovery shall be guided by the following principles.

- Product License for Future Manufacturing. The first overriding intention is for the Goldwassers to receive the per unit Royalties set forth in Attachment One, to the extent that a litigation recovery or settlement includes a product license for future manufacturing of DVR products.
- Past Manufacturing. The second overriding intention is for the Goldwassers to receive for past manufacturing between 10-40% of any litigation recovery or settlement in which the Patent was asserted.
- TiVo Service Carriage. Where TiVo grants to a third party a product license for past or future manufacture either (i) royalty-free or (ii) for a per-unit royalty payment less than the corresponding Royalty that would be due to the Goldwassers under Attachment One in return for carriage of a TiVo service with DVR Functionality (for which TiVo receives revenue from either the third party or its customers), then TiVo shall pay the per-unit Royalties to the Goldwassers on all such DVRs carrying the TiVo service with DVR Functionality. To the extent that such license covers DVRs that do not carry the TiVo service with DVR Functionality, such portion of the product license shall be deemed to confer on TiVo an intangible benefit to be considered below.
- Intangible Benefits.[1] The parties acknowledge that there are a number of circumstances where TiVo might receive intangible benefits (other than carriage of the TiVo service with DVR Functionality ) in connection with a settlement, and that valuing these intangible benefits may be difficult. The parties agree to the following principles with respect to intangible benefits:

    i. the parties acknowledge that in some cases, the intangible benefits received by TiVo may lead to an increase in the sale of DVRs by TiVo and manufacture by its licensees, resulting in additional compensation to the Goldwassers under the royalty payment provision of the agreement;

    ii. the Goldwassers will be entitled to Litigation Recovery Payment where TiVo receives intangible benefits as compensation for a past or future license to manufacture units under the Patent that can be reasonably interpreted as leading to revenue to TiVo in the future from either licensees, consumers, or license fees except where the intangible benefits are merely a "throw-in" in the settlement agreement (for example, to give one party a "symbolic" recovery in litigation), regardless of how the parties to the settlement value the intangible benefits; and

    iii. where the Goldwassers are entitled to a payment for intangible benefits, such payment shall be based on the true cash value of such intangible benefits to TiVo as opposed to a non-cash value which may be reflected in the settlement agreement.

- Cross-License. Where TiVo receives a license from a third party as part of a cross-license between TiVo and that third party, Goldwasser may be entitled to receive a litigation

---

[1] Intangible benefits means indirect, intangible, or other speculative benefits such as intellectual property rights received, marketing support or technology-sharing.

CONFIDENTIAL                                                                                    TiVo-GW 008948

recovery payment on the value of the license received by TiVo (even if not reduced to cash), depending on the nature of the cross-license. In situations where the cross-license exchanges "core" DVR intellectual property rights between the parties (where "core" DVR intellectual property is closely related to the subject matter disclosed and/or claimed in the Goldwasser Patent), Goldwasser is not entitled to a payment on the value of the inbound license received by TiVo. In situations where TiVo licenses out the Goldwasser patent and other "core" DVR intellectual property rights but receives "non-core" intellectual property rights in return, thereby allowing the other party to compete with TiVo in the DVR industry, Goldwasser would be entitled to a "value-weighted" payment on the cash value of the license TiVo receives, provided that the cross-license does not also provide for a per-unit royalty on the future sale of licensed DVRs by the other party. However, to the extent that the cash value of the license TiVo receives is compensation for past infringement, Goldwasser is entitled to a value-weighted payment for past sales in addition to the per-unit royalty on future sales.

- Negative Covenants. Goldwasser is not entitled to payment where TiVo enforces the Patent against a third party and, although no payment, tangible or intangible, is received by TiVo, the third party agrees not to compete in the DVR space for a period of two (2) years. The parties expect the value of these negative covenants to be reflected in additional royalties under the per unit royalty provisions.
- Indirect Recoveries. There may be circumstances where the assertion of the Goldwasser patent results in a settlement, recovery or other opportunity, which TiVo then converts into an additional recovery. For example, TiVo could assert the Goldwasser patent against a third party and receive an assignment of that third party's intellectual property rights as a settlement. TiVo might then assert these assigned intellectual property rights against yet another third party (with or without the Goldwasser patent) and receive a cash recovery. The parties intend to acknowledge the contribution of the Goldwasser patent to the ultimate cash recovery and agree that Goldwasser is entitled to receive that portion of the cash recovery that is attributable to that portion of the assigned intellectual property rights that is attributable to the Goldwasser patent.
- Fairness. The litigation recovery provisions should be interpreted in a manner that most fairly reflects the parties' intentions as set forth in the agreement and these principles.

CONFIDENTIAL

TiVo-GW 008949

# EXHIBIT A – STOCK ISSUANCE AGREEMENT

<u>Attached.</u>

1100645

- 15 -

CONFIDENTIAL

TiVo-GW 008950