# EXHIBIT R

# NON-DISCLOSURE AGREEMENT

THIS NON-DISCLOSURE AGREEMENT ("Agreement") is effective as of the latest execution date affixed hereto (the "Effective Date"), wherein TiVo Inc., a Delaware corporation ("TiVo"), and Eric Goldwasser and Romi Goldwasser (jointly "Goldwasser") contemplate a possible business transaction that will involve meetings and communications that may require the disclosure of certain Confidential Information (as defined below).

FOR GOOD AND VALUABLE CONSIDERATION (including, but not limited to, the disclosure of the Confidential Information pursuant to the terms and condition hereof), the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. Confidential Information. "Confidential Information" means technical, financial, business, marketing, planning, trade secrets, and other non-public information and data, in written, oral, electronic, magnetic, photographic and/or other forms, including, but not limited to: (i) those items set forth or identified on Exhibit A as it may be amended and supplemented, in writing, from time to time during the term of this Agreement; (ii) oral and written communications of one party with the other party which are marked or identified as confidential or secret or similarly marked or identified; (iii) communications which a reasonable person would recognize from the surrounding facts and circumstances to be confidential or secret; and (iv) the existence of this Agreement, the disclosure and reason for disclosure of the Confidential Information, and the existence, nature and substance of the meetings, communications, negotiations and, potentially, transaction between the parties.

2. Evaluation Purpose. Confidential Information shall be used by the parties only in connection with the evaluation, negotiation and potentially, consummation, of a transaction between them ("Evaluation Purpose").

3. No Copies. Neither party, nor any of its employees, officers, agents or affiliates, may copy any Confidential Information, in whole or in part, absent the prior written consent of the other party, except in connection with the Evaluation Purpose.

4. No Disclosure. Each party acknowledges that the Confidential Information comprises valuable trade secrets and proprietary information belonging to the other party. Therefore, except as otherwise expressly permitted in this Agreement, each party (and its employees, officers, agents and affiliates permitted access hereunder) agrees that it will:

(i) not use or disclose any Confidential Information except in connection with the Evaluation Purpose;

(ii) not disclose any Confidential Information to any person unless such person needs access in order for such party to engage in the Evaluation Purpose; *provided, however,* that such person is bound by fiduciary or contractual duties of confidentiality to such party that are at least as stringent as those contained herein, or the attorney-client privilege and duty of confidentiality; and

(iii) in all instances, exercise at least the same degree of care to maintain the secrecy of the Confidential Information as such party exercises to protect its own most valuable trade secrets, but in no case less than reasonable care.

5. Compelled Disclosure. In the event that one party (the "Disclosing Party") is requested, required or compelled to use or disclose the other party's (the "Affected Party") Confidential Information pursuant to oral questions, interrogatories, subpoenas, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process, the Disclosing Party shall provide the Affected Party with prompt written notice of such request or requirement so that the Affected Party may seek a protective order or other appropriate remedy or waive compliance with the provisions of this Agreement. If the Disclosing Party is nonetheless advised by legal counsel that it is legally compelled or otherwise required by law to use or disclose Confidential Information, the Disclosing Party may, without liability hereunder, use or disclose that portion of the Confidential Information which Disclosing Party is legally compelled or required to be used or disclosed.

6. Other Disclosure. The confidentiality and non-disclosure obligations of the previous sections shall not apply if, and to the extent, that a party establishes by documentary evidence that: (i) the Confidential Information was lawfully known to it prior to its receipt from the other party; (ii) the Confidential Information is or becomes part of the public domain other than by the fault or negligence of such party; (iii) the Confidential Information is rightfully disclosed to such party by a third party that is legally free to do so; (iv) such party independently develops Confidential Information separate from its receipt of such Confidential Information from the other party; or (v) the Confidential Information is obtainable from public sources or other sources with the legal right to disclose it.

7. Residuals. Goldwasser acknowledges and agrees that TiVo is actively engaged in business and operations related to the subject matter of Goldwasser's Confidential Information and that Goldwasser will be disclosing Confidential Information to members of TiVo's staff who are actively engaged in such business and operations, including, but not limited to, product development. Goldwasser agrees that this disclosure may facilitate the unintentional incorporation of "Residuals" (as defined below) within TiVo's products or in connection with TiVo's business strategies. Goldwasser acknowledges that TiVo will not commence the Evaluation Purpose unless Goldwasser agrees that TiVo is in no way exposing itself to any potential liability for trade secret misappropriation, or breach of contract for any use or exploitation of Residuals and is relying on Goldwasser's agreement hereto. Therefore, Goldwasser covenants not to sue or bring any action, claim or proceeding against TiVo or its affiliates based in whole or in part on the use, copying or

other exploitation of any Residuals. "Residuals" means information in intangible form that may be retained in the unaided memory of a person receiving that information.

8. Ownership of Intellectual Property. The Confidential Information and all intellectual property rights fixed, embodied or subsisting therein or arising therefrom, are, and will remain the sole and exclusive property of its owner, and the owner retains all ownership and all right, title and interest therein. Nothing in this Agreement, nor the furnishing of any Confidential Information hereunder shall be construed as granting any right or license, whether express or implied, under any intellectual property rights to any person or entity.

9. Return of Confidential Information. Within five (5) days of written request from the other party, each party will return or destroy the Confidential Information and all notes, copies, summaries or other reproductions made of or from any Confidential Information (and certify to the other party in writing thereto).

10. Injunctive Relief. Goldwasser acknowledges that any unauthorized disclosure of Confidential Information will cause TiVo great and irreparable harm to its business and products that monetary damages alone will not redress. TiVo is entitled to obtain, from any court of competent jurisdiction, immediate injunctive or other equitable relief to stop or prevent the actual or threatened unauthorized disclosure of any Confidential Information.

11. Duration. This Agreement applies to any Confidential Information that is provided or has been provided by either party to the other for the Evaluation Purpose, and will continue to govern all such disclosures until terminated by thirty (30) days written notice by either party to the other, except that each party's obligations relating to Confidential Information disclosed prior to termination will continue for a period of five (5) years thereafter after the date of such disclosure. All sections of this Agreement which are necessary to accomplish this purpose shall survive termination of the Agreement.

12. Restrictions on Publicity and Admissibility. The parties agree not to issue or release any articles, advertising, publicity or other public notices relating to this Agreement, the facts and circumstances pertaining hereto, or any Confidential Information or mentioning or implying the name of the other party (including, without limitation, the fact that a meeting or discussion has taken place between the parties), except as may be required by law and then only after providing the other party with an opportunity to review and comment thereon. Neither party guarantees the successful outcome of the negotiations and nothing in this Agreement shall be deemed to create an obligation that the parties enter into or otherwise consummate a transaction. The parties agree that, unless they consummate a transaction, neither party will use Confidential Information for any purpose in any litigation between them, except for the purpose of enforcing this Agreement.

13. Miscellaneous. This Agreement may not be assigned by Goldwasser without the express written consent of TiVo. Notwithstanding anything in this Agreement to the contrary, any or all of the rights of TiVo under this Agreement may be assigned by TiVo to any direct or indirect subsidiary of TiVo or in connection with a disposition of all or substantially all of TiVo's assets or the business unit in TiVo which is the subject of this Agreement, whether by merger, sale or other form of transaction. This Agreement is binding on the respective parties hereto and will bind their successors and permitted assigns. In the event of any action or proceeding to enforce or interpret any of the provisions of this Agreement, the prevailing party shall be entitled to be reimbursed for the costs of such action or proceeding, including attorneys' fees. If any provision of this Agreement is deemed unenforceable, then such provision will be severed from this Agreement and the remaining provisions will remain in full force and effect. Any waiver by either party of the requirements in this Agreement must be made in writing and should not in any way be deemed a waiver of such party's right to enforce any other requirements or provisions of this Agreement. This Agreement is the entire agreement between the parties and supersedes any and all prior or contemporaneous communications, representations, agreements and promises, written or oral, between TiVo and Goldwasser, regarding the subject matter of this Agreement. This Agreement may be modified only in writing signed by both parties hereto.

IN WITNESS WHEREOF, each of the parties has executed this Agreement as of the Effective Date.

"TIVO"

TIVO INC.:

By: _____  10/6/03

Title: __VP, GENERAL COUNSEL__  Date

"GOLDWASSER"

_____  9/16/03

Eric Goldwasser  Date

_____  9/12/03

Romi Goldwasser  Date

CONFIDENTIAL

TiVo-GW 008909

# EXHIBIT A

1. Goldwasser's Confidential Information: All technological advancements developed by Goldwasser subsequent to the filing of U.S. Patent Application No. 07/660,991, filed March 12, 1991, titled Variable-Delay Video Recorder; now U.S. Patent No. 5,241,428, issued August 31, 1993 to Goldwasser et al.

_____
_____
_____
_____
_____
_____

2. TiVo's Confidential Information: _____

_____
_____
_____
_____
_____

CONFIDENTIAL                                                              TiVo-GW 008910